UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA/KENTUCKY/OHIO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:19-cv-04681-SEB-TAB |
| TENNESSEE VALLEY INDUSTRIAL, Default Entered 5/27/20, | ) ) ) ) | |
| CHARLES MIX, | ) ) | |
| Defendants. | ) | |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs, comprised of union pensions funds, initiated this action on November 25, 2019, charging Defendant Tennessee Valley Industrial (TVI) with various ERISA violations and Defendant Charles Mix ("Defendant" and "Mix") with common law and statutory conversion. A default judgment has been entered against TVI for its failure to respond to the Complaint or otherwise defend itself in this action. [Dkt. 69, 70]. Now before the Court is Defendant Charles Mix's Motion for Summary Judgment [Dkt. 61] and Plaintiffs' Cross-Motion for Summary Judgment [Dkt. 65]. For the reasons set forth herein, Defendant's Motion is <u>GRANTED</u>, and Plaintiffs' Cross-Motion is <u>DENIED</u>.

**<u>FACTS</u>**

The following facts are undisputed between the parties, unless so noted.

1

TVI, a wholly-owned subsidiary of Ergo Mechanical Industrial ("EMI"), was a mechanical installation company which operated out of Georgetown, Kentucky, installing mechanical equipment, conveyor systems, and racking systems. Mix Dep. at 6, 10. EMI designed custom materials and equipment. *Id.* at 56–57. EMI and TVI kept their finances separate but consolidated them into one profit and loss statement. Lazzaro Dep. at 8. Mix was employed as the CEO and president of EMI, and he received his salary through EMI. Mix Dep. at 6. Mix's role at EMI included his also serving as the president of TVI, though he was not involved in the day-to-day operations of TVI. Jerrell Wilburn, a vice president of EMI, managed the daily operations, and was paid by TVI directly, unlike Defendant. *Id.* at 7. TVI's payroll was overseen by Andrew Lazzaro, EMI's controller and a CPA with nearly fifteen years of experience. Lazzaro Dep. at 5–7.

Plaintiffs are labor organizations representing and acting on behalf of bargaining unit members in Indiana, Kentucky, and Ohio with its headquarters in Greenwood, Indiana. Dkt. 66 at 2. Plaintiffs and TVI entered into a collective bargaining agreement ("CBA"), which stated as follows:

> The Employer agrees to deduct from the gross wages of its employees' weekly paychecks an amount equivalent to the then current membership dues and/or other assessments as established by the Indiana/Kentucky/Ohio Regional Council of Carpenters. Likewise, the Employer agrees to deduct from the employees' weekly paycheck all deductions contained in the parties' then current collective bargaining agreement. Such deductions shall be made for each employee once the employee signs the standard check-off authorization form. The employer agrees to transmit said checked-off monies to the Union's designated depository at the same time it pays its fringe benefit contributions.

> Dkt. 56 at ¶ 4.

Pursuant to the CBA, Mix understood that TVI, on the twentieth of each month, was required to issue payments to the union for the respective membership dues. Mix Dep. at 21–22. EMI was not subject to the CBA. *Id.* at 56.

Throughout 2019, the financial conditions of TVI and EMI deteriorated significantly. *Id.* at 46. Both businesses typically operated under tight profit margins, but conditions for both worsened in August 2019 when two of TVI's projects finished significantly over budget. Lazzaro Dep. at 24–25, 35–36. As TVI sought to mitigate the losses on these two projects, its deficits continued to grow throughout 2019. As TVI inched towards insolvency, it found itself unable to pay various financial obligations, including those owed to the unions. Around this same time, Mr. Lazzaro began engaging in weekly discussions with Mix to review TVI's cash flow and determine what expenses could and should be paid. Their top priority was to pay employees their wages. *Id.* at 13. Mix possessed the final decision-making authority to approve which invoices would be paid. *Id.* at 12, 27.

Its financial condition created times when funds were sufficient to allow TVI to cover payroll but not cover the contractual obligations to the unions. *Id.* at 13. Mix testified that TVI "had only the money to pay net wages owed to the employees. So there was nothing held back[.]." Mix Dep. at 30. In other words, for example, if an employee had earned a total of $150, which yielded a net payout of $120 after his union dues were deducted, TVI typically was able to pay only the amount of the employee's net wages. During periods of revenue deficiencies, TVI sought to negotiate payment plans with the union. Lazzaro Dep. at 14–15, 34.

TVI's payroll functions were performed by an in-house processor in Georgetown, Kentucky, who transmitted the underlying information along with the funds for payment to a payroll company based in Cleveland, Ohio, to cut the check. Mix Dep. at 15–16; Lazzaro Dep. at 7, 17–18, 36. Despite the payroll stubs reflecting that a "deduction" had been made, Mr. Lazzaro testified that money was not set aside from the employees' paychecks, explaining as follows:

> Q: Was there ever any specific account that union deductions were put into?
>
> A. No. No. Any deductions taken from the – if they were taken from the employee's check were just reduced from the amount of the withdrawal that they would take out of our bank account. So we would get a summary report that said how much we owed [the payroll company] and that's what they would withdraw from our account.
>
> Q: So there was not a separate account where that money was being put to pay the union?
>
> A: No there was not.

Lazzaro Dep. at 37–38.

Mix, personally, was not typically involved in the process of making deductions for or payments to the various unions; however, after becoming aware that TVI was delinquent on its payment obligation, he developed a payment plan with the unions and the bank to allow TVI to stay afloat and the unions to be paid. Mix Dep. at 22; Lazzaro Dep. at 38. TVI succeed in making some payments under these plans, but stopped when the money ran out.  Mix testified that he applied his best efforts in assuring that all employees, vendors, and unions were paid. *Id.* at 38–39. Mr. Lazzaro testified that Mix never issued any instruction not to pay the unions. *Id.* at 15. Further, Mr. Lazzaro testified

that Mix never "t[ook] money that had been earmarked for the union and pocket[ed] it for himself" nor did he ever "t[ake] any deducted amounts and use[] [them] for his own use or personal enjoyment." *Id.* at 37–38. Mr. Lazzaro further testified that all of his own actions in managing TVI's payroll comported with his ethical duties as a CPA and that Mr. Mix never asked him to violate his ethical obligations. *Id.* at 36.

On January 16, 2020, both EMI and TVI became insolvent and shut down operations. Mix Dep. at 52. The bank canceled EMI's line of credit, so "there was no more money" for the companies to pay their employees and suppliers. Lazzaro Dep. at 9. No employee of EMI, including Defendant, received any salary or wages covering their last two weeks of work. *Id.* at 9–11; Mix Dep. at 43.

In this lawsuit, Plaintiffs seek to hold Mix personally liable for common law and statutory conversion, pursuant to the Indiana Crime Victim's Relief Act, Ind. Code § 34-24-3-1.

<u>**ANALYSIS**</u>

## I.    Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences

flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

Courts often confront cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Kohl v. Ass'n. of Trial Lawyers of Am.*, 183 F.R.D. 475 (D. Md. 1998). Here, the Court has considered the parties' respective memoranda and the exhibits attached thereto and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 574 (1986).

## II.   Discussion

A.   <u>Defendant Is Entitled to Summary Judgment on Plaintiffs' Common Law Conversion Claim</u>

The parties disagree as to whether Indiana or Kentucky law governs Plaintiffs' common law conversion claims.[1] Our review of the issues and applicable legal principles raised here allows us to conclude that Kentucky law controls our analysis, as Mix has argued.

---

[1] Mix also argues that the conversion claim against him is barred because it is actually nothing more than a contractual claim rooted in TVI's contractual obligations under the CBA with the Union. On the record before us, it does appear that Plaintiffs' argument sounds in contract and that Mix was not a signatory to it. Dkt. 67-3. Even so, because Plaintiffs have not brought a contract claim here, this argument by Mix is not relevant.

Federal courts hearing cases pursuant to diversity of citizenship jurisdiction apply the substantive law of the states in which they are located. *Western Smelting & Metals, Inc. v. Slater Steel, Inc.*, 621 F. Supp. 578, 583 (N.D. Ind. 1985). If more than one state's law might apply, *Erie* requires us to apply the forum state's choice of law rules. *DNET Servs., LLC v. Digital Intelligence Sys. Corp.*, 2009 WL 1259375, at *2 (S.D. Ind. May 5, 2009) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Horn v. Transcon Lines, Inc.*, 7 F.3d 1305, 1307 (7th Cir. 1993)).

In tort cases such as the one at bar, Indiana choice of law rules dictate that the traditional rule of *lex loci delicti* governs. *Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004). Thus, we apply the substantive law of the state "where the last event necessary to make an actor liable to the alleged wrong takes place." *DNET Servs., LLC*, 2009 WL 1259375, at *2 (*quoting Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987)). "For the tort of conversion, the last act necessary to make the defendants liable is the misappropriation of the property itself." *Western Smelting & Metals, Inc.*, 621 F. Supp. at 583 (citing *Eaton Corp. v. Appliance Valves Corp.*, 526 F. Supp. 1172, 1178 (N.D. Ind. 1981)) (applying Indiana law). The locus of the alleged misappropriation of the property "is the law which governs the resulting cause of action and which is to be applied with respect to substantive phases of torts or causes of action therefore." *Eaton Corp.*, 526 F. Supp. at 1178.

Here, Defendant contends, and we agree, that all events giving rise to alleged conversion by Defendant occurred in Kentucky, where Defendant reviewed TVI's financials, and set priorities for paying expenses generally, and ultimately opted not to

7

pay to the unions the funds they were owed pursuant to the CBA. TVI was headquartered in Kentucky, its payroll function was performed by an in-house processor in Kentucky, and the payroll checks were sent to and cut by a payroll company located in Ohio. *See* Mix Dep. at 15–16; Lazzaro Dep. at 7, 17–18, 36. The only connection this activity has with Indiana is that Plaintiffs' headquarters are located in Indiana and, beginning in August 2019, TVI's reporting of hours for millwrights' Indiana based work. Dkt. 66 at 2–3, Ex. E. Plaintiffs concede that it was Mix's alleged "failure to transmit the money to Indiana" that underlies their conversion claim against him, but that failure did not occur in Indiana. *Id.* at 10–11.

Plaintiffs' explanation of their theory of relief conflates personal jurisdiction and choice of law principles. Their contention that some of the union work at issue was performed in Indiana does not affect our choice of law analysis. Indeed, their argument that Indiana law applies here is both misconceived and misplaced. The relevant fact in determining the locus of the tort of conversion in our case is where the deductions from the employees' wages were taken, which is the gist of a conversion claim. No such deductions were withheld or "converted" in Indiana. They occurred in Kentucky where the in-house payroll function was performed. Accordingly, Kentucky law governs the analysis of Plaintiffs' common law conversion claims.[2]

---

[2] Plaintiffs maintain that there are no practical differences between the definitions of common law conversion under Indiana and Kentucky law. *See* Dkt. 66; Dkt. 72. Our research suggests otherwise: the elements of common law conversion under Kentucky law require a showing of seven distinct elements to sufficiently state a claim, including the intent of the defendant, but Indiana law does not include "mens rea (as) an element of tortious conversion." *Nat'l Assoc. of*

Conversion "is an intentional tort that involves the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014). To succeed on a claim for conversion under Kentucky law, a plaintiff must establish each of the following elements:

> (1) the plaintiff had legal title to the converted property;
> (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;
> (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
> (4) the defendant intended to interfere with the plaintiff's possession;
> (5) the plaintiff made some demand for the property's return which the defendant refused;
> (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and
> (7) the plaintiff suffered damage by the loss of the property.

*Jasper v. Blair*, 492 S.W.3d 579, 582 (Ky. Ct. App. 2016).

For the reasons explicated below, we hold that Plaintiffs have failed to satisfy all of these elements of a *prima facie* case of common law conversion, thereby entitling Defendant to summary judgment as a matter of law.

Plaintiffs' briefing in response to the motion for summary judgment did not address all of the seven elements of a conversion claim and some of their arguments are not supported by the facts in the record before us (i.e., that Mix converted the amount of the payroll deductions covering his own salary.) As the Seventh Circuit has made clear in a myriad of cases, "perfunctory and undeveloped arguments, and arguments that are

---

*Sys. Adm'rs, Inc. v. Avionics Solutions, Inc.,* No. 06–CV–159, 2008 WL 140773, at *14 (S.D. Ind. Jan. 20, 2008) (Barker, J.)).

unsupported by pertinent authority, are waived." *U.S. v. Berkowitz*, 927 F.2d 1376, 1384

(7th Cir. 1991). In addition, as proffered support for their contention that Mix is

individually liable for conversion, Plaintiffs repeatedly cite a Second Circuit case,

*Lopressi v. Terwillger*, 126 F.3d, 34 (2d Cir. 1997), in which an individual corporate

officer was held liable for conversion of union deductions. Plaintiffs cite this holding as

controlling here. However, Plaintiffs fail to note that in *Lopressi* the Second Circuit was

applying New York state law, which does not include as essential elements defendant's

culpable intent or proof of dominion for the defendant's own use and beneficial

enjoyment, as Kentucky law requires.[3] Plaintiffs also repeatedly cite Indiana law, which,

as discussed above, is not relevant because it requires different elements than does

Kentucky law.

Defendants are entitled to summary judgment based on the absence of any

evidence that would establish the third "dominion/own use and beneficial enjoyment"

element of a claim of conversion. In their reply brief, Plaintiffs incorrectly contend that

Kentucky law does not require such a showing that Defendant used the money for his

own use and beneficial enjoyment. *See* Dkt. 72 at 5. Kentucky law clearly requires such a

showing. *Jasper*, 492 S.W.3d at 582. Plaintiffs' assertion to the contrary is based on an

unreported case from this Court applying Indiana law which stated that officers of a

---

[3] New York law requires only two elements in bringing a successful claim of conversion: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*, 26 N.Y.S.3d 725 (N.Y. Sup. 2015) (citing *State v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 710 (N.Y. 2002)).

corporation "may be held liable for conversion to the extent their actions result in a conversion by the corporation, even if they receive no personal benefit." *Meridian Financial Advisors, Ltd. v. Pence*, No. 1:07-cv-00995-LJM-TAB, 2010 WL 3947507, at *6 (S.D. Ind. Oct. 7, 2010). They thus argue that Defendant's control over the deducted monies to pay TVI's expenses is enough to establish conversion as a matter of law. Neither Kentucky case law nor statute supports this argument, and since Kentucky law is controlling, the case applying Indiana law is entirely inapposite.

The undisputed evidence reflects that Defendant was paid by EMI, and that, despite being President of TVI, Defendant received funds only from EMI, not TVI. Yet Plaintiffs persistently assert that Defendant knowingly and intentionally directed that his own salary continue to be paid during TVI's financial hardship. This claim is entirely unsupported by the facts before us. Defendant did not receive his salary (which otherwise would have been paid by EMI) for his final two weeks of work. Mr. Lazzaro, who managed TVI's financial matters, testified that Defendant never took money that was earmarked for the Union and pocketed it for himself and never took any deducted amounts for his own use and beneficial enjoyment. Lazzaro Dep. at 37–38. Thus, there is a total dearth of evidence to support the contention that Defendant exercised dominion over the union deductions for his own use and beneficial enjoyment.

Plaintiffs give surprisingly short shrift in their briefing to any discussion of the essential elements of a conversion claim under Kentucky law, confining their argument to a single footnote set out in their reply brief [Dkt. 72 at 6 n.4] referencing the fourth element, to wit: the defendant's intent to interfere with the plaintiffs' possession.

11

Plaintiffs frame the intent issue as being not whether Defendant knowingly or intentionally made the union deductions, but whether he acted with intent when he chose to use that money to pay other creditors. However, Mix testified that he believed that the union dues were paid by TVI itself pursuant to the CBA. TVI had received a summary report showing how much it owed from its payroll company and Mix assumed that that amount would be withdrawn from the bank account. He said that he was unaware that there were "actual deductions" from individual employee paychecks, and that he never gave any direct instruction not to pay a union, using instead his best efforts to assure that employees, vendors, and the unions were paid, as reflected in the payment plans TVI set up with the Union. When the payment plan fell through and the bank revoked the company's line of credit, the failure to pay the Union occurred because of the overall collapse of the business, not due to Mix's intent to interfere with the "plaintiffs' possession" of or entitlement to the union deductions.

Plaintiffs offer no evidence to contradict Mix's testimony or the corroborative financial records. The complete absence of any material fact to support the third and fourth elements of a claim for conversion entitles Defendant to summary judgment as a matter of law on this claim against him.[4]

---

[4] Defendant has fully briefed all seven of the required elements in his motion for summary judgment in an effort to establish that Plaintiffs cause of action omits any evidence as to the first, second, third, fourth, and sixth elements. We have determined above that Plaintiffs' briefing lacks evidentiary support for the third and fourth essential elements. Beyond a discussion of those two elements, Plaintiffs have failed to address any of the remaining elements as prescribed by Kentucky law. Thus, we are under no obligation in issuing our decision on the pending motion to fill in those gaps in order to compensate for Plaintiffs' adversarial half-heartedness.

B.  Defendant Is Entitled to Summary Judgment on Plaintiffs Statutory Conversion
Claim

In addition to their common law conversion claim described above, Plaintiffs have

alleged a statutory conversion claim, pursuant to the Indiana Crime Victims Relief Act.

The Indiana Crime Victims Relief Act ("CVRA"), Ind. Code § 34-24-3-1 (2019), affords

relief to victims of various crimes, including theft, statutory conversion, criminal

mischief, and statutory fraud, a civil remedy.

 Defendant seeks summary judgment on Plaintiffs' statutory conversion claim,

arguing that the CVRA does not apply to acts of conversion alleged to have occurred

outside of the state of Indiana and, in any event, Plaintiffs have again failed to satisfy the

essential legal elements of statutory conversion. Plaintiffs agree that the CVRA would

not extend to bad acts occurring outside of Indiana's borders, though they maintain that

Defendants may still be held liable under the CVRA for Defendant's failure to transmit

any wage deductions that occurred in Indiana.

As previously established, all of the acts giving rise to Plaintiffs' claim of

conversion by Mix occurred outside of Indiana. Accordingly, the CVRA is inapplicable

here and provides no basis for relief.

## III.     Conclusion

For the foregoing reasons, Defendant Charles Mix's Motion for Summary

Judgment [Dkt. 61]is GRANTED, and Plaintiff's Cross Motion for Summary Judgment

[Dkt. 65] is DENIED. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date:    9/27/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Adam York Decker
JOHNSON & KROL, LLC
decker@johnsonkrol.com

Suzanne C. Dyer
JOHNSON & KROL, LLC
dyer@johnsonkrol.com

Joseph E. Mallon
JOHNSON & KROL, LLC
mallon@johnsonkrol.com

Thomas Edward Moss
THOMAS E MOSS, ATTORNEY AT ALL
temosslaw@gmail.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pzimmerly@boselaw.com